UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MATTHEW CALICCHIO, SANDRA CALICCHIO,
and MICHAEL CALICCHIO,

                 Plaintiffs,

       -against-

SACHEM CENTRAL SCHOOL DISTRICT, LISA
JOHNSON, JOHN DOLAN, ANDREW LARSEN,
JACK RENDA, KAREN MOTT, THE SUFFOLK
COUNTY POLICE DEPARTMENT, THE
COUNTY OF SUFFOLK, and JOHN DOES
number 1-15.

                 Defendants.
--------------------------------------------------------------X

**MEMORANDUM & ORDER**
14-CV-5958 (DRH) (SIL)

**APPEARANCES:**

**SCOTT LOCKWOOD, ESQ.**
Attorney for Plaintiffs
1476 Deer Park Ave.
Suite 3
North Babylon, New York 11703

**DEVITT SPELLMAN BARRETT, LLP**
Attorneys for Defendants Sachem Central School District,
   Lisa Johnson, John Dolan, Andrew Larsen, Jack Renda,
   and Karen Mott
50 Route 111
Smithtown, New York 11787
By:   Joshua S. Shteierman, Esq.
      Jeltje deJong, Esq.


**HURLEY, Senior District Judge:**

     Plaintiffs Matthew Calicchio ("Matthew" or "Plaintiff"), Sandra Calicchio

("Sandra") and Michael Calicchio ("Michael") (Sandra and Michael are collectively

referred to as "Parents") commenced this action against defendants Sachem Central

School District (the "District"), Lisa Johnson ("Johnson"), John Dolan ("Dolan"), Andrew Larsen ("Larsen"), Jack Renda ("Renda"), Karen Mott ("Mott") (Johnson, Dolan, Larsen, Renda, and Mott are collectively referred to as "Individual District Defendants"), the Suffolk County Police Department and the County of Suffolk alleging claims under the Thirteenth and Fourteenth Amendments and the Fair Labor Standards Act ("FLSA"), together with various state law claims. Presently before the Court is the motion of the District Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Complaint.

During the years 2010 through 2013, Matthew was a student in the District. Compl. ¶ 20. During this time period, the Individual District Defendants "required" Matthew to perform work for the District consisting of "working on the computer system, the computer network and security for computers" for the District. *Id. at* ¶¶ 22-23. Matthew "was repeatedly removed from his classroom learning environment and from his lunch period and was forced [to] perform" this "uncompensated work." *Id. at* ¶¶ 24-26. This was done without his parents' permission and in fact Matthew was ordered by the Individual Defendants not to tell his parents about this "forced" work. *Id. at* ¶¶ 103-04, 109-10. In November 2013, Matthew who was born on August 10, 1996 and "eligible for compulsory education," was expelled from the District but not "afforded an opportunity for a hearing on the continued eligibility of

2

himself for attendance and instruction." *Id. at* ¶¶ 34, 55-57.

At some unspecified time, the District caused a knowingly false criminal complaint to be lodged resulting in Matthew being "arrested and charged with the crimes of Computer Trespass and Unlawful Duplication of Computer Material. *Id. at* ¶¶ 62-63, 65-66. In addition, the District reported to various news sources that Matthew "had 'illegally accessed student records,' had 'hacked into' the computer system, and committed an act of 'computer trespass.' " *Id.* at ¶ 64.

Based on these allegations, Matthew asserts § 1983 claims premised on the Thirteenth Amendment and the due process clause, as well as under the FLSA, and Parents each assert a § 1983 premised on a violation of substantive due process. Both Matthew and parents also assert state law claims.

## DISCUSSION

### I.     Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, 556 U.S.* at 679; *accord Harris*, 572 F.3d at 72.

## II.    The Thirteenth Amendment Claim

The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const., amend. XII § 1. Here, the question is whether the allegations that Matthew was "forced" to perform work on the District's computer systems, network and computer security states a claim for involuntary servitude.

"[T] he term 'involuntary servitude' is not limited to chattel slavery-like conditions. The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery." *McGarry v. Pallito*, 687 F.3d 505, 510 (2d Cir. 2012). In *United States v. Kozminski*, 487 U.S. 931, 952 (1988) the Supreme Court defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."

Matthew's allegation that he was "forced" to perform work of the District's computer is insufficient to state a claim under the Thirteenth Amendment. Conspicuously absent from the complaint is any allegation that Matthew was forced "by the use of threat of physical restraint or physical injury, or by the use of threat of coercion through law or the legal process."

In his opposition papers Matthew requests that to the extent the Court determines the pleading is deficient he be allowed "to amend the complaint to include a paragraph stating that 'the Defendants forced Plaintiff, Matthew

Calicchio, to work for them under threat of expulsion from school.' " Pls.'s Mem. in Opp. at 3. Such a conclusory amendment standing alone would not cure all the deficiencies with this claim as there is an absence of facts to plausibly allege involuntary servitude.

"[C]ourts have consistently found the involuntary servitude standard is not so rigorous as to prohibit all forms of labor that one person is compelled to perform for the benefit of another. The Thirteenth Amendment does not bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are 'exceedingly bad.' " *Immediato v. Rye Neck School Dist.*, 73 F.3d 454, 459 (2d Cir. 1996) (quoting *United States v. Shackney*, 333 F.2d 475, 485 (2d Cir. 1964) and citing *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990)). Rather, the appropriate analysis is a "contextual approach" in which "the challenged labor [is examined] through a wider constitutional prism. *Immediato*, 73 F.3d at 459.

In *Immediato*, the Second Circuit found that a school's mandatory community service program did not constitute impermissible involuntary servitude. *Id.* at 460. In reaching this conclusion, the court noted that the work required was not severe and the nature of the work and the conditions under which it was to be performed were not onerous. Moreover, the purpose of the program was educational not exploitative. Even though students who chose not to participate in the program would not graduate, they could avoid the program "by attending private school,

transferring to another public school or studying at home to achieve a high school equivalency certificate." And "while these choices may be economically or psychologically painful, choices they are nonetheless. They might not render the program voluntary, but they contribute to the conclusion that it is not involuntary servitude." *Id.* Finally, the court observed that not every service program that a school may devise will survive constitutional scrutiny. "If, for instance, the students were required to spend their Saturdays at the homes of their teachers, washing their cars, painting their houses, and weeding their gardens, the extent, nature and conditions of 'service' and the more obviously exploitative purpose of the program might indeed warrant a finding of 'involuntary servitude.' " *Id.*

Here given that Matthew had the same choices available to the students in *Immediato*, and given the absence of any particularized facts concerning the extent, nature, and conditions of the work Matthew was allegedly forced to perform, the claim of involuntary servitude lacks plausibility. Accordingly, the motion to dismiss this claim is granted. Plaintiff will, however, be given an opportunity to amend.

## III.  The FLSA Claim

Matthew asserts two claims under the FLSA. The first claim is that the District Defendants subjected him to "oppressive child labor within the meaning of 29 U.S.C. § 203(l)." Compl. at ¶¶ 29-37. The second claim is that the District Defendants failed to pay him "even the federal minimum wage" for the work he performed. *Id.* at ¶¶ 38-49.

Section 203(l) of the FLSA provides:

> Oppressive child labor means a condition of employment under which (1) any employee under the age of sixteen years is employed by an employer (other than a parent or a person standing in place of a parent employing his own child or a child in his custody under the age of sixteen years in an occupation other than manufacturing or mining or an occupation found by the Secretary of Labor to be particularly hazardous for the employment of children between the ages of sixteen and eighteen years or detrimental to their health or well-being) in any occupation, or (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or well-being; but oppressive child labor shall not be deemed to exist by virtue of the employment in any occupation of any person with respect to whom the employer shall have on file an unexpired certificate issued and held pursuant to regulations of the Secretary of Labor certifying that such person is above the oppressive child-labor age. The Secretary of Labor shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Secretary of Labor determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being.

29 U.S.C. § 203(l). Section 212(c) provides that "[n]o employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." *Id.* at §212(c).

With respect to minimum wage, the FLSA provides that

> [e]very employer shall pay to each of his employees who in
> any workweek is engaged in commerce or in the
> production of goods for commerce, wages at the following
> rates: (1) except as otherwise provided in this section, not
> less than—(A) $5.85 an hour, beginning on the 60th day
> after May 25, 2007; (B) $6.55 an hour, beginning 12
> months after that 60th day; and (C) $7.25 an hour,
> beginning 24 months after that 60th day.

29 U.S.C. § 206(a)(1).

Turning first to the minimum wage claim, in order to state a prima facie
case, a plaintiff must adequately allege that he was a covered employee. The FLSA
minimum-wage provisions only apply to employees who are "(1) personally engaged
in interstate commerce or in the production of goods for interstate commerce
('individual coverage'), or (2) [were] employed in an enterprise engaged in interstate
commerce or in the production of goods for interstate commerce ('enterprise
coverage')." *Iqbal v. Multani*, 2013 WL 5329286, at *5 (E.D.N.Y. Sept. 20, 2013); *see
Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir.2009) (stating that the two
categories of FLSA coverage "are commonly referred to as 'individual' and
'enterprise' coverage").

Matthew asserts both individual and enterprise coverage. (*See* Compl. at ¶¶
39 and 40 (asserting Matthew was an employee within the meaning of 29 U.S.C. §
201ff and the District was an enterprise engaged in interstate commerce within the
meaning of 29 U.S.C. § 206).)  District Defendants argue that he has not adequately
plead that he was covered under the FLSA or that the District was an enterprise
covered by the statute.  Defs.'s Mem. at 7-9.  As Matthew has adequately plead

9

enterprise coverage, it is unnecessary to determine whether individual coverage has been properly alleged.

In support of their argument that the allegations regarding enterprise coverage are deficient District Defendants assert:

> Pursuant to the FLSA, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000. *See* 29 U.S.C. §203(s)(1)(A).

Defs.'s Mem. at 8. And, because "the instant Complaint is silent as to the nature of that commerce" and "does not make any allegations regarding the District's annual volume of sales," the FLSA claim should be dismissed. *Id.* at 8-9. The problem with District Defendants' argument is that it fails to take into account that the definition of a covered enterprise includes an enterprise engaged in the operation of a school.

Section 203(s)(1) provides, in its entirety:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that--
>
> (A)(I) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are

10

separately stated);

(B) *is engaged in the operation of a* hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, *elementary or secondary school*, or an institution of higher education *(regardless of whether or not such* hospital, institution, or *school is public or private or operated for profit or not for profit)*; or

(C) is an activity of a public agency.

29 U.S.C. §203(s)(1) (emphasis added); *see also* 29 U.S.C. § 203(r) (defining activities for a business purpose to include activities performed in connection with the operation of a school). Under subsection B, a covered enterprise includes one that is engaged in the operation of a school, whether public or private. Here, the allegations that "Defendant Sachem Central School District is a Central School District . . . prov[id]ing public education" (Compl. ¶ 21) provides sufficient plausibility that the District is an "enterprise engaged in commerce or in the production of goods for commerce" under section 203(s)(1)(B). To the extent that the District Defendants seek dismissal of Matthew's FLSA minimum wage claim for failure to allege a covered enterprise, their motion is denied.

The foregoing discussion is also dispositive of the motion to dismiss the oppressive child labor claim. Under section 212(c) "[n]o employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or *in any enterprise engaged in commerce or in the production of goods for commerce,*" 29

U.S.C. §212(c) (emphasis added), and the District falls within the statutory definition of such an enterprise.

The motion to dismiss the FLSA claims is denied.

**IV.    The Due Process Claim**

Matthew's Due Process claim as alleged in the Complaint may be fairly summarized as follows: he was expelled from the District in November 2013 without being afforded an opportunity for a hearing on his continued eligibility for attendance and instruction under New York's compulsory education law. (Compl. at ¶¶ 53-59.) District Defendants move to dismiss this claim arguing that students over the age of 16 may be dropped from enrollment pursuant to New York Education Law § 3202(1-a) if they are absent 20 consecutive school days and that at the time the decision to remove Matthew was made he was 17 and therefore did not have a due process right to continued education as he was absent for 20 consecutive days. Defs.'s Mem. at 9-10.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law . . . ." U.S.Const. Amend. XIV, § 1. Property interests are both created and defined by "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To prevail on a procedural due process claim, a plaintiff must demonstrate that he "has a property interest, created by state law, in . . . the benefit that was

12

removed." *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996). *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Green v. Bauvi,* 46 F.3d 189, 195 (2d Cir. 1995).

New York's education laws, provide in pertinent part, that "[a] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without payment of tuition." N.Y. Educ. Law § 3202(1). The Second Circuit has recognized that section 3202(1) of the New York Education Law "creates a property right in a free public education . . . that may not be taken away without the minimum procedures required by the Due Process Clause." *Kajoshaj v. New York City Dept. of Educ.*, 543 Fed. Appx. 11, 16 (2d Cir. 2013) (citing *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006) and *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). *See Mitchell C. v. Bd. of Educ.*, 67 A.D.2d 284, 288, 414 N.Y.S.2d 923, 926  (2d Dept. 1979) ("[W]here a State or subdivision thereof undertakes to provide a free education to all students, it must recognize an individual student's legitimate entitlement to a public education as a property interest protected by the due process clause . . . ."). The extent of that property interest, however, is circumscribed by other subsections of Education Law § 3202. *See Handberry*, 446 F.3d at 353 (holding that section 3202(7), which governs youths who are incarcerated, does not give rise to the legitimate expectation of the same type of educational benefit that section 3202(1) does).

Pursuant to N.Y. Education Law §3205, full time compulsory educational attendance is required for youths aged six to sixteen. As Matthew was past the age of compulsory education at the time the decision was made to remove him from the rolls of students, District Defendants maintain that pursuant to Education Law § 3202(1-a) Matthew "did not have a due process right to continued education when he was absent from school for twenty consecutive days." Defs.'s Mem. at 10.

Section 3202(1-a) provides:

> No pupil over the compulsory attendance age in his or her school district shall be dropped from enrollment unless he or she has been absent twenty consecutive school days and the following procedure is complied with: The principal or superintendent shall schedule and notify, in writing and at the last known address, both the student and the person in parental relation to the student of an informal conference. At the conference the principal or superintendent shall determine both the reasons for the pupil's absence and whether reasonable changes in the pupil's educational program would encourage and facilitate his or her re-entry or continuance of study. The pupil and the person in parental relation shall be informed orally and in writing of the pupil's right to re-enroll at any time in the public school maintained in the district where he or she resides, if otherwise qualified under this section. If the pupil and the person in parental relationship fail, after reasonable notice, to attend the informal conference, the pupil may be dropped from enrollment provided that he or she and the person in parental relation are notified in writing of the right to re-enter at any time, if otherwise qualified under this section.

N.Y. Educ. Law § 3202(1-a).

Section 3202(1-a) does not simply allow for a school district to drop students over the compulsory attendance age if they have been absent for 20 consecutive

days as District Defendants appear to contend. Rather, it provides for notice of an informal conference, requires that the reasons for the absence and whether changes in the student's educational program would facilitate his/her continuance in school be considered in any decision, and requires that the student and parent be informed in writing of the right to re-enter at any time. The allegation that Matthew was never "afforded an opportunity for a hearing on the continued eligibility of himself for attendance and instruction" is sufficient to state a claim that his procedural due process rights were violated when the procedures in § 3202(1-a) were not followed.[1] The motion to dismiss this claim is denied.

## V. The Interference with Parental Liberty Claim

Both parents assert that the District Defendants infringed upon their "constitutionally protected right of parental liberty" by forcing Matthew to work for the District without their permission and by ordering him not to tell his parents he was being forced to so work. (Compl. at ¶¶ 102-04, 108-10.) Although the complaint does not specify the source of this right of parental liberty, plaintiffs' memorandum identifies it as a substantive due process claim. *See* Pls.'s Mem. in Opp. at 9.

---

[1] Parenthetically, the Court notes that the letter sent to Matthew's mother advising her that he was being removed from the District's rolls does not refer to a conference having been held nor does it advise of the right to re-enter; rather it states in its entirety: "In view of the fact that your son, Matthew Calicchis, has been absent from school 20 consecutive days since the start of school, I have no recourse but to remove Matthew from the rolls of Sachem High School North." (Shteierman Aff. Ex. B; *see generally* Defs.'s Mem. at p. 10 n. 1 (asserting the letter is properly considered on this motion to dismiss as having been incorporated by reference in the complaint).)

District Defendants move to dismiss this claim arguing that "in the Second Circuit, the cases which have held that there is a Section 1983 cause of action pertaining to the parent-child relationship typically take place in the context of physical removal" and in "the wrongful death context." Defs.'s Mem. at 11 (citing *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) and *Greene v. City of New York*, 675 F. Supp. 110 (S.D.N.Y. 1987)). And, because it is not alleged that Matthew was removed from their custody and care and the alleged force labor took place only during the school day, "the alleged actions did not amount to a physical removal from their care and such claim must be dismissed as a matter of law." Defs.'s Mem. at 11-12.

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against a government action that is incorrect or ill advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995) (internal quotation marks omitted). *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). To state a substantive due process claim, plaintiffs must allege (1) a valid liberty or property interest, and (2) defendants infringed on that interest in an arbitrary or irrational manner. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.' ").

The parental interest "in the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). As the Second Circuit in *McCaul v. Ardsley Union Free School Dist.*, 514 Fed. Appx. 1 (2d Cir. 2013) stated, "[i]t is well settled that parents have 'a constitutionally protected liberty interest in the care, custody and management of their children.'" (citing *Southerland v. City of N.Y.*, 680 F.3d 127, 142 (2d Cir.2011)). Thus, the first element of a substantive due process claim has been satisfied.

The cases relied upon by District Defendants are not to the contrary. *Duchese v. Sugarman*, 566 F.2d 817 (2d Cir. 1977) involved a claim of procedural, not substantive, due process. Therein, the Circuit recognized that the interest of a parent "in the companionship, care, custody and *management* of his or her children" encompasses "the right of the family to remain together without the coercive interference of the state." *Id*. at 825 (emphasis added). In *Greene v. City of New York*, 675 F. Supp. 110 (S.D.N.Y. 1987) the issue was whether the children of a parent killed by state action may sue under § 1983. Noting that in "in other contexts it is well established that there is a broadly defined liberty interest in preserving the integrity and stability of the family from intervention without due process of law" the court held that there is a § 1983 claim for deprivation of the parent-child relationship in the wrongful death context. *Id*. at 114. [2]

---

[2] Even if District Defendants are correct that Second Circuit cases which have held a viable substantive due process claim is stated by a parent have involved removal or wrongful

To state a claim for substantive due process, Parents must also allege facts

making plausible the conclusion that District Defendants' actions were arbitrary or

irrational. They have done so.  The recent decision in *Jackson v. Peekskill City*

*School Dist.*, – F. Supp. 3d –, 2015 WL 2331086 (S.D.N.Y. May 1, 2015) is

instructive in this regard.

In *Jackson*, parents of a minor child alleged that, without their consent, a

school counselor removed the minor from her fourth period class and transported

her secretly between the school and a health clinic for the purpose of assisting her

to obtain birth control. Finding that, although it was a "close call,"  the parents had

sufficiently alleged that the counselor had arbitrarily and irrationally deprived the

parents of their right to raise their daughter as they chose, the court reasoned:

> "Courts have recognized the parental liberty interest only
> where the behavior of the state actor compelled
> interference in the parent-child relationship." *Anspach v.*
> *City of Philadelphia Dep't of Pub. Health*, 503 F.3d [256,]
> 261 [3d Cir. 2007]. Plaintiffs allege the [counselor]
> compelled interference in their relationship with [their
> child] when the [counselor] allegedly drove her to an
> off-campus site, withheld this information from the
> school, and arranged for her transportation back to
> school. This alleged action, which goes far beyond mere

---

death claim, the courts of this circuit may not have had the opportunity to address the full
contours of a parent's substantive due process rights. Supreme Court cases have not limited the
liberty interests of  parents to physical removal.   For example, the Court has held that a state
cannot interfere with a parent's decision to send her child to a parochial school where the
children are taught German before eighth grade, *Meyer v. Nebraska*, 262 U.S. 390, 399-401
(1923) and cannot require parents to choose public schools over private schools offering
comparable programs, *Pierce v. Soc'y of Sisters of the Holy Names of Jesus & Mary*, 268 U.S.
510, 534-35 (1925).  Also, parents are entitled to make choices about their children's religious
training and practices, *Wisconsin v. Yoder*, 406 U.S. 205, 219 (1972).

> counseling or exposure to an idea, it provided [the child]
> the means to access birth control. Further, [the child] was
> obliged to be at school—and while plaintiffs believed she
> was receiving instruction in her fourth period class, she
> was allegedly aided in accessing healthcare services.

2015 WL 2331086 at *5.  Here, the District Defendants allegedly removed Matthew

from his academic classes during the school day, "forced" him to perform work and

exerted pressure on him not to tell his parents.  Given the allegation of

manipulative and coercive conduct by the defendants, Parents have sufficiently

alleged arbitrary interference with their liberty interest in the management of their

son. *Cf. Anspach*, 503 F.3d at 261 (no recognition of fundamental right to bring up

children when "there is no manipulative, coercive, or restraining conduct by the

State.")

The motion to dismiss Parents' substantive due process claims is denied.

## VI.    The Monell Claim against the District

Asserting that the complaint "does not identify any specific policy or practice

which allegedly led to a constitutional violation" and "is devoid of any allegation

that the alleged actions of the District Defendants were taken pursuant to a District

policy, or a failure to train,"  the District contends it is not subject to liability under

*Monell v. Department of Social Services*, 436 U.S. 658, 591 (1978).  Defs.'s Mem. at

13. Opposing the motion, plaintiffs assert that the principal and assistant principal

are policy makers for present purposes.  Pls.'s Mem. in Opp. at 10-12. In reply, the

District contends that "[e]ven if this Court were to accept that the individually

named defendants were policy makers under *Monell*, . . . plaintiffs' failure to

19

identify a single District policy, custom, or practice which caused the alleged constitutional violations is fatal to their claim." Defs.'s Reply at 9.

A municipality cannot be liable under 42 U.S.C. §1983 unless "the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94). To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Id.* Rather, the existence of a municipal policy or custom may be plead in any of four ways. A plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees. *Giscombe v. New York City Dept. of Educ.*, 2013 WL 829127, * 7 (S.D.N.Y. Feb. 28, 2013) (citing *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 430 (S.D.N.Y.2012)); *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y.2011)*; Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263, 266 (N.D.N.Y. 2000)).

More particularly, as applicable to the present case, the Supreme Court has

long recognized that "[i]f the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. . . . Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id.* at 481–83 (citations and footnotes omitted). In other words, "municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483–84 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (" 'policy' generally implies a course of action consciously chosen from among various alternatives.")).

In some instances a public school principal may act as a final policy maker, *see, e.g., Zambrano–Lamhaouhi,* 866 F. Supp. 2d 147, 175 (E.D.N.Y.2011). *See generally T.E. v. Pine Bush Cent. School Dist.*, 58 F. Supp. 2d 332, 374-375 (S.D.N.Y. 2014) (discussing cases that have held a principal may qualify as a final policy maker under Monell, as well as those cases that have held a principal is not a final policy maker). Here, however, the complaint identifies 3 of the Individual

District Defendants only as an "administrator, employee and agent" of the District (Compl. ¶¶ 11-13) and the other 2 simply an "employee and agent," (Compl. ¶¶ 14-15). As to those alleged to be administrators, the complaint is devoid of any allegations regarding their title or duties vis a vis the claims at issue as to make plausible the claim that the District is liable under *Monell* because these defendants are final decisionmakers. The District's motion to dismiss the *Monell* claims against it is granted. Plaintiffs will, however, be granted an opportunity to amend.

## VII.  Qualified Immunity of the Individual District Defendants

Individual District Defendants assert they are entitled to qualified immunity as "plaintiffs have failed to sufficiently plead that their constitutional rights have been violated" and "[f]urthermore plaintiff's Complaint fails to set forth facts sufficient to show that the individually named defendants clearly violated statutory or constitutional rights." Defs.'s Mem. at 14. This aspect of the motion to dismiss is denied. First, the Court has held Matthew's procedural due process and the Parents' substantive due process claims have been adequately alleged. Second, and more importantly, defendants simply assert, without any reasoned discussion or citation to case law that these rights are not clearly established. The task of constructing an argument with appropriate citation to case law by the movant is a prerequisite to any analysis by the Court.

## CONCLUSION

For the reasons set forth above, the motion of District Defendants is granted

as to Matthew's Thirteenth Amendment claim and the *Monell* claims against the District but otherwise denied.  Plaintiffs are granted leave to file an amended complaint within twenty (20) days of the date of this Order.

Dated:  Central Islip, New York
       October 13, 2015

/s/   Denis R. Hurley
Denis R. Hurley
District Court Judge