UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MATTHEW CALICCHIO, SANDRA CALICCHIO,
and MICHAEL CALICCHIO,

                    Plaintiffs,

        -against-

SACHEM CENTRAL SCHOOL DISTRICT, LISA
JOHNSON, JOHN DOLAN, ANDREW LARSEN,
JACK RENDA, KAREN MOTT, THE SUFFOLK
COUNTY POLICE DEPARTMENT, THE
COUNTY OF SUFFOLK, and JOHN DOES
number 1-15,

                    Defendants.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
14-CV-5958 (DRH) (SIL)

**APPEARANCES:**

**SCOTT LOCKWOOD, ESQ.**
Attorney for Plaintiffs
1476 Deer Park Ave.
Suite 3
North Babylon, New York 11703

**DEVITT SPELLMAN BARRETT, LLP**
Attorneys for Defendants Sachem Central School District,
   Lisa Johnson, John Dolan, Andrew Larsen, Jack Renda,
   and Karen Mott
50 Route 111
Smithtown, New York 11787
By:   Joshua S. Shteierman, Esq.
      Jeltje deJong, Esq.

**DENNIS M. BROWN, SUFFOLK COUNTY ATTORNEY**
Attorneys for Defendants The Suffolk County Police
   Department and The County of Suffolk
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, New York 11788
By:   Arlene S. Zwilling, Assist. County Attorney

**HURLEY, Senior District Judge:**

Plaintiffs Matthew Calicchio ("Matthew" or "Plaintiff"), Sandra Calicchio and Michael Calicchio commenced this action against defendants Sachem Central School District (the "District"), Lisa Johnson ("Johnson"), John Dolan ("Dolan"), Andrew Larsen ("Larsen"), Jack Renda ("Renda"), Karen Mott ("Mott") (Johnson, Dolan, Larsen, Renda, and Mott are collectively referred to as "Individual District Defendants")(District and Individual District Defendants are collectively referred to as "District Defendants"), the Suffolk County Police Department ("SCPD") and the County of Suffolk (the "County")(SCPD and the County are collectively referred to as the "County Defendants") alleging, inter alia, claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Thirteenth and Fourteenth Amendments, together with various state law claims.

Presently before the Court is (1) the motion of the District Defendants to dismiss the first, fifth, seventh, eighth and ninth causes of action and the District's motion to dismiss the *Monell* claims (contained in the first and fourth causes of action); and (2) the motion of the County Defendants to dismiss the twelfth cause of action. For the reasons set forth below, the District's motion is granted in part and denied in part and the County's motion is granted.

# BACKGROUND

The following allegations are taken from the Amended Complaint ("AC").[1]

During the years 2010 through 2013, Matthew was a student in the District. AC at ¶ 20. During this time period, the Individual District Defendants "required" Matthew to perform work for the District consisting of "working on the computer system, the computer network and security for computers" for the District. *Id.* at ¶¶ 22-23. Matthew "was repeatedly removed from his classroom learning environment and from his lunch period and was forced [to] perform" this "uncompensated work." *Id.* at ¶¶ 24-25. Matthew was told by Assistant Principal Larson "that if he did not do the work they wanted him to do on the computers that he would have him arrested by the FBI, and the FBI would raid his house." *Id.* at ¶ 26. Principal Dolan told Matthew that if he did not do the work "they would have him expelled from school." *Id.* at ¶ 27. When Matthew stopped working on the District computer, "the Defendants had him expelled from school and had him arrested." *Id.* at ¶ 28.[2] Matthew was forced to perform this work without his parents' permission and in fact Matthew was ordered by the Individual Defendants not to tell his parents

---

[1] By Order dated October 13, 2015, the Court granted, in part, a motion to dismiss by the District. Specifically the Court dismissed plaintiffs' Thirteenth Amendment claim and the *Monell* claims against the District with leave to replead. Familiarity with that decision is presumed.

[2] It is also asserted the District "had been alleged to have serious security flaws in its computer system" several years prior to November 2013 and those flaws became public knowledge. AC at ¶¶ 75-76. "[I]n order to hide the problems with their security system, [the District] had [Matthew] arrested and charged with various crimes, including computer trespass." *Id.* at ¶ 77.

about this "forced' work. *Id.* at ¶¶ 106-07, 112-13. In November 2013, Matthew who was born on August 10, 1996 and "eligible for compulsory education," was expelled from the District without notice and an opportunity to be heard and was not "afforded an opportunity for a hearing on the continued eligibility of himself for attendance and instruction." *Id.* at ¶¶ 34, 55-62.

At some unspecified time, the District caused a knowingly false criminal complaint to be lodged resulting in Matthew being "arrested and charged with the crimes of Computer Trespass and Unlawful Duplication of Computer Material." *Id.* at ¶¶ 65-66, 78. In addition, the District reported to various news sources that Matthew "had 'illegally accessed student records,' had 'hacked into' the computer system, and committed an act of 'computer trespass.' " *Id.* at ¶ 67.

The County Defendants had Matthew "go through a 'perp walk' for the media. After the initial perp walk, "a second 'perp walk' was again staged so that the media could get a better view" of Matthew. These perp walks were staged "solely for the benefit of the media and for no legitimate police purpose." *Id.* at ¶¶ 99-101.

As relevant to the instant motions, Matthew asserts § 1983 claims premised on the Thirteenth Amendment against the District Defendants (the first cause of action), the Due Process Clause of the Fourteenth Amendment against the District (the fourth cause of action) and the Fourth Amendment against the County (the twelfth cause of action), as well as state law claims against the District Defendants

4

for malicious prosecution (the fifth and seventh causes of action), intentional infliction of emotional distress (the eighth cause of action) and negligent infliction of emotional distress (the ninth cause of action).

## DISCUSSION

### I.    Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, 556 U.S.* at 679; *accord Harris*, 572 F.3d at 72.

## II.     The Thirteenth Amendment Claim Against the District Defendants

In its October 13, 2015 Memorandum ("October Memorandum), this Court dismissed Matthew's Thirteenth Amendment Claim, with leave to replead, because of the absence of factual allegations to support a claim of involuntary servitude. Specifically, the Court held that the bare allegation that Matthew was "forced" to perform work on the District's computer was insufficient because of the absence of any allegation that Matthew was forced "by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." In addition, given that Matthew had available choices and given the

6

absence of any particularized facts concerning the extent, nature, and conditions of the work Matthew was allegedly forced to perform, the claim of involuntary servitude lacked plausibility.

District Defendants argue that the Amended Complaint fails to correct these deficiencies. Specifically, they assert that the allegations that Matthew was forced to work under threat of expulsion from school and that he would be arrested by the FBI if he did not perform the work are insufficient citing *United States v. Shackney*, 333 F.2d 475, 486-86 (2d Cir. 1964) and *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012). Dist. Defs' Mem. at 5-6. Additionally, the Amended Complaint "does not speak to the extent of the work Matthew was forced to perform, the hours he spent working on the computers, the conditions he was allegedly faced with, nor does it allege that plaintiff did not want to perform this work." *Id.* at 6. In response, plaintiff, citing *United States v. Kozminski*, 487 U.S. 931 (1988) and *Immediato v. Rye Neck School Dist.*, 73 F.3d 454 (2d Cir. 1996), maintains that given the exploitative nature of the allegations, plaintiff's age and that he was "taken out of his required classes" and told not to discuss what he what he was doing with his parent, his involuntary servitude claim is plausible. Pl.'s Mem. in Opp. to District at 2-6.

The amended complaint fails to address the deficiencies noted by this Court in its October Memorandum. Quite simply, the allegations that Matthew was threatened with expulsion and that he would be arrested by the FBI, are insufficient to plausibly allege that he was forced to work for the defendant "by the

use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Kozminski*, 487 U.S. at 952.

There are no allegations that Matthew was subject to the use or threat of physical restraint or injury. That threats may have been made that Matthew would be expelled and that he would be arrested by the FBI are insufficient, without further facts, to constitute the use or threat of coercion through law or legal process.

Most of the cases which have upheld Thirteenth Amendment claims of involuntary servitude based on the use or threat of coercion through law or legal process involve a credible threat of imprisonment. For example, in *McGarry v. Pallito*, 687 F.3d 505 (2d Cir. 2012), the Court held that a pre-trial detainee's allegation that his work in the prison laundry was compelled and maintained by the use and threatened use of physical and legal coercion had plausibly alleged a claim under the Thirteenth Amendment. *Id*. at 511.

> [Plaintiff] supports his allegations with well-pleaded facts that the defendants threatened to send him to "the hole" if he refused to work and that he would thereby be subjected to 23 hour-per-day administrative confinement and shackles. These allegations plausibly allege "threats of physical restraint or physical injury within the meaning of *Kozminski*. . . . Likewise, [Plaintiff] also plausibly alleges facts supporting his assertion that defendants coerced him through legal process by threatening him with DRs [i.e. disciplinary reports], which are alleged to be taken into consideration when making recommendations for a release date and, therefore lengthen any period of incarceration.

*Id*. at 511-12. Similarly, in *United States v. Reynolds*, 235 U.S. 133, 146, 150 (1914), the Court found involuntary servitude in a criminal surety system whereby a

misdemeanant contracted to work for a surety in exchange for the surety's payment of the fine, subject to criminal penalties should the misdemeanant fail to fulfill the labor contract. In *Pollock v. Williams*, 322 U.S. 4, 5, 25 (1944), the Court held that subjecting debtors to prosecution and criminal punishment for failing to perform services for which money had been received in advance violates the prohibition against involuntary servitude. On the other hand, the Second Circuit in *United States v. Shackney*, 333 F.2d 475, 486 (1964), held while "[a] credible threat of deportation might well constitute such duress as to invalidate any agreement made under its influence," threats "to have the employee sent back to the country of his origin, at least absent circumstances which would make such deportation equivalent to imprisonment or worse" insufficient to support involuntary servitude. *Id*. at 485; *see also id*. at 486 (involuntary servitude includes servitude created "by a credible threat of imprisonment").

As the Second Circuit further explained in *Immediato*

> In application, courts have consistently found the involuntary servitude standard is not so rigorous as to prohibit all forms of labor that one person is compelled to perform for the benefit of another. The Thirteenth Amendment does not bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are "exceedingly bad." [*Shackney*, 333 F.2d] at 486; *see also Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir.1990). For example, a state may require an attorney to work pro bono, *United States v. 30.64 Acres of Land*, 795 F.2d 796, 800–01 (9th Cir.1986) (attorney may, in the alternative, choose not to practice law), or a doctor who has accepted scholarship funds to perform pro bono services, *United States v.*

> *Redovan*, 656 F.Supp. 121, 128–29 (E.D.Pa.1986), *aff'd*, 826 F.2d 1057 (3d Cir.1987) (doctor may choose to pay damages for breach of contract). The government may also require the performance of "civic duties" such as military service, *Selective Draft Law Cases*, 245 U.S. 366, 390, 38 S.Ct. 159, 165, 62 L.Ed. 349 (1918), jury duty, *see Hurtado v. United States*, 410 U.S. 578, 589 n. 11, 93 S.Ct. 1157, 1164 n. 11, 35 L.Ed.2d 508 (1973), and upkeep of local public roads, *Butler*, 240 U.S. at 333, 36 S.Ct. at 259–60, without trenching upon the Thirteenth Amendment.

73 F.3d at 459.

What is required is a "contextual approach." *Id*. at 60. In other words, this Court must determine whether, taking "as a whole the set of conditions existing" in the imposition of requiring Matthew to work on the District computers, Matthew has plausibly alleged that he was in a condition of involuntary servitude. Absent further factual assertions, impermissible involuntary servitude has not been plausibly alleged.

Here, there is an absence of specific factual allegations concerning how often Matthew was "pulled out of" his academic schedule, the number of hours he spent working on the District computers, the conditions he faced, and the nature of the work he was forced to perform. Also absent are specifics such as when and how often he was threatened with expulsion and/or arrest. Without such factual assertions, the Thirteenth Amendment claim is not plausible.

The motion to dismiss the Thirteenth Amendment claim is granted, with leave, once again, to amend the complaint.

## II. The Monell Claims against the District

In its October Memorandum, the Court dismissed the *Monell*[3] claims against the District as the Complaint "was devoid of any allegations regarding [the alleged administrators'] titles or duties vis a vis the claims at issue to make plausible the claim that the District is liable under *Monell* because these defendants are final decisionmakers." October Memorandum at 22.

In the Amended Complaint it is asserted that Dolan is the principal of Sachem High School North and Larsen is the Assistant Principal. No further factual modifications were made from the original Complaint vis a vis the *Monell* claims.

Asserting that the "amended complaint suffers from the same defect [the] Complaint did, namely that it is devoid of any allegations that Larsen and Dolan are final decisionmakers with respect to the claims at issue" the District again moves for dismissal of the *Monell* claims. Defs.'s Mem. at 7. Opposing the motion, plaintiff asserts that the principal and assistant principal are policy makers for present purposes citing various New York regulations which he claims "imbue[] both the principal and the assistant principal with discretionary rule making authority" and that he has set forth specific facts which show the personal

---

[3] In *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 692-94 (1979), the Supreme Court enunciated the now familiar rule that local governments cannot be held liable for constitutional violations under a theory of respondeat superior; in order to establish municipal liability the constitutional deprivation must arise from a governmental policy or custom.

involvement of [] Dolan and Larson in making the policy determinations with respect to [Matthew]. Pls.'s Mem. in Opp. to District at 7-9.  In its reply the District counters that "generalized statements of the job responsibilities of a principal or assistant principal do not in any way establish that Dolan and Larsen were final policymakers with respect to the particular conduct challenged" here. Defs.'s Reply at 4.

As set forth in the October Memorandum, to show a policy, custom, or practice for purposes of *Monell*, the plaintiff need not identify an express rule or regulation. October Memorandum at 20 (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)). Rather, the existence of a municipal policy or custom may be plead in any of four ways.  A plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees. *Giscombe v. New York City Dept. of Educ.*, 2013 WL 829127, * 7 (S.D.N.Y. Feb. 28, 2013) (citing *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 430 (S.D.N.Y. 2012); *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 147, 175

(E.D.N.Y. 2011)*; Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263, 266 (N.D.N.Y. 2000)).

Here, there is no claim of the existence of a formal policy, persistent practice, or failure to train or supervise. Rather, plaintiff seeks to hold the District liable for actions taken by the principal and assistant principal asserting they had final decision making authority.

Whether the principal or assistant principal generally has final policy making authority is not the inquiry; "rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.) In other words, "municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483–84 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).

In the present case there are two claims asserted against the District pursuant to *Monell* - the Thirteenth Amendment involuntary servitude claim and the Due Process claim. Given the Court's dismissal of the Thirteenth Amendment

claim, it is unnecessary, at this juncture, to address whether plaintiff has plausibly alleged *Monell* liability on that claim. The Court will therefore confine its discussion to the Due Process claim.

The Due Process claim is grounded on the allegations that Matthew was expelled from the District in November 2013 (for being absent from school 20 consecutive days)[4] without being afforded an opportunity for a hearing on his continued eligibility for attendance and instruction under New York's compulsory education law. As detailed in the Court's October Memorandum, Matthew states a claim for denial of due process because N.Y. Educ. Law § 3202(1-a), the provision under which Matthew was removed from the rolls of the District, provides for a procedure that Matthew alleges was not followed. With respect to that procedure, the statute provides:

> The principal or superintendent shall schedule and notify, in writing and at the last known address, both the student and the person in parental relation to the student of an informal conference. At the conference the principal or superintendent shall determine both the reasons for the pupil's absence and whether reasonable changes in the pupil's educational program would encourage and facilitate his or her re-entry or continuance of study. The pupil and the person in parental relation shall be informed orally and in writing of the pupil's right to re-enroll at any time in the public school maintained in the district where he or she resides, if otherwise qualified under this section. If the pupil and the person in parental relationship fail, after reasonable notice, to attend the informal conference, the pupil may be dropped from

---

[4] See Shteierman Aff. Ex. B (DE 11-3) (letter advising Plaintiff he was being removed from rolls of the District for 20 consecutive absences).

> enrollment provided that he or she and the person in
> parental relation are notified in writing of the right to
> re-enter at any time, if otherwise qualified under this
> section.

N.Y. Educ. Law § 3202(1-a). As Education Law § 3202(1-a) specifically confers final

authority upon a principal with respect to removal of a student due to 20

consecutive absences, the principal's actions are sufficient to state a claim for

*Monell* liability. *Cf. Roe*, 542 F.3d at 37 (""Whether an official has final

policymaking authority is a legal question, determined on the basis of state law.");

*Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) (holding

that because the plaintiff contended that defendant principal "was responsible for

the investigation into the students' false sexual harassment complaint and he failed

to take action in response to her complaints of sexual harassment" the plaintiff

"c[ould] proceed under the theory that [the principal's] conduct ... represents official

policy" of the school district).

The motion to dismiss the Due Process claim against the District is denied.

## III.    The State Law Claims Against the District Defendants

District Defendants move to dismiss the state law claims for malicious

prosecution, intentional infliction of emotional distress, and negligent infliction of

emotional distress.  The Court will address these claim seriatim.

### A.    Malicious Prosecution

Plaintiff's claims for malicious prosecution (the fifth  and seventh causes of

action) are premised on allegations that the District, acting with "actual malice"

caused a false criminal complaint to be lodged against Matthew causing him to be

arrested and charged with the crimes of Computer Trespass and Unlawful

Duplication of Computer Material and reported to new sources that Matthew had

hacked into the computer system and illegally accessed student records. AC at ¶¶

65-69. The motive for having Matthew arrested and charged was to hide the

security flaws in the District's computer system. *Id*. at ¶¶ 75-77.

New York law "places a heavy burden on malicious prosecution plaintiffs,

requiring that they establish four elements: (1) the commencement or continuation

of a criminal proceeding by the defendant against the plaintiff, (2) the termination

of the proceeding in favor of the accused, (3) the absence of probable cause for the

criminal proceeding and (4) actual malice." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191,

195 (2000) (internal quotation marks omitted); *accord Rothstein v.* Carriere, 373

F.3d 275, 282 (2d Cir. 2004); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d

Cir. 2000).

The District asserts that the amended complaint is deficient as to the first

and second elements. Specifically, with respect to the commencement of a criminal

proceeding, that the District is alleged to have provided incriminating information

to the police is insufficient; rather, Plaintiff was required to set forth facts that

would amount to "affirmatively inducing the police to act" such as "procuring" the

arrest or "showing active, officious and undue zeal." Dist. Mem. at 9 (citing

*DuChateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 688 N.Y.S.2d 12

(1st Dept. 1999) and *Robles v. City of New York*, 104 A.D.3d 829, 961 N.Y.S.2d 533

16

(2d Dept. 2013)). As to the second element, the District points to the lack of any allegations that the criminal charges were terminated in Matthew's favor. *Id*. In response, plaintiff maintains that the District has conceded the sufficiency of the malicious prosecution claim because of the District argument that the intentional infliction of emotional distress claim falls with the ambit of other traditional tort liability, specifically slander and malicious prosecution.

The factual recitations in the complaint plausibly assert that the District intentionally gave false information to the police resulting in the criminal charges and therefore was not a mere civilian complainant but rather affirmatively induced the police to act. *See Brown v. Nassau County*, 306 A.D.2d 303, 760 N.Y.S.2d 655, 655-56 (2d Dept. 2003) (rejecting claim that defendant was a mere civilian as there were issues of fact as to whether she intentionally provided false evidence to the police); *see also Stampf v. Long Island R.R. Auth.*, 2010 WL 2517700, *10 (E.D.N.Y. June 14, 2010) (holding that although the mere reporting of a crime to the police and giving testimony are insufficient to support liability, "an individual who provides false information to the police or prosecutor may be held liable for malicious prosecution"). Thus, the first element of a malicious prosecution claim has been adequately pled.

The complaint is deficient, however, as it does not allege that the criminal prosecution has been terminated in Matthew's favor.[5] Accordingly, the claim for

---

[5] The Court rejects plaintiff's argument that the District conceded the sufficiency of the malicious prosecution claim. As is noted later in this opinion,

malicious prosecution is dismissed. To the extent that plaintiff is able to allege that there was a final termination of the criminal proceeding that is not inconsistent with innocence, *see Rothstein*, 373 F.3d at 286-87; *Cantalino v. Danner*, 96 N.Y.2d 391, 396 (2001); *Smith-Hunter*, 95 N.Y.2d at 198-99, he may amend his complaint.

### B. Intentional and Negligent Infliction of Emotional Distress

In New York, the tort of intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir.1996). The elements of an action for negligent infliction of emotional distress are a "breach of a duty owed to [the] plaintiff which exposes him or her to an unreasonable risk of bodily injury or death." *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 293 (E.D.N.Y. Mar. 22, 2010). Extreme and outrageous conduct is also an element of negligent infliction of emotional distress. *Franco v. Diaz*, 51 F. Supp. 3d 235 (E.D.N.Y. 2014). To the extent that these causes of action are based on conduct encompassed by traditional torts such as false imprisonment, malicious prosecution, and slander, there are precluded by New York law, even if the alleged conduct falls short of the traditional tort. *Demosthene v. City of New York*, 2015 WL 5093116, * 26 (E.D.N.Y. June 26, 2015) (Report and Recommendation, adopted by Order dated Aug. 28, 2015). Additionally, " 'public policy bars claims for intentional infliction of

claims for infliction of emotional distress that fall within the ambit of traditional torts are precluded even if the alleged conduct falls short of the traditional tort.

emotional distress against a governmental entity.' " *Burbar v. Incorporated Village of Garden City*, 961 F. Supp. 2d 462, 474 (E.D.N.Y. 2013); *accord Frederique v. County of Nassau*, – F. Supp. 3d –, 2016 WL 1057008, *17 (E.D.N.Y. Mar. 11, 2016); *Shahzad v. County of Nassau*, 2013 WL 6061650, *8 (E.D.N.Y. Nov. 14, 2013).

Here, plaintiff asserts claims for intentional infliction of emotional distress against the District and the Individual District Defendants based not only the initiation of criminal proceeding and alleged slanderous statements but on the allegations concerning his being "repeatedly" pulled from class and forced to work on the District's computer system without compensation. While these assertions are insufficient, without more, to state a claim for involuntary servitude, they nonetheless are sufficient as this stage to assert conduct intolerable in a civilized society.

The cases relied upon by District Defendants are not to the contrary. In both *Leibowitz v. Bank Leumi Trust Co.*, 152 A.D.2d 169, 182, 548 N.Y.S.2d 513 (2d Dept. 1999) and *Owen v. Leventritt,* 174 A.D.2d 471, 471 (1st Dept. 1991) the plaintiffs relied solely on statements to support their claim of intentional infliction of emotional distress.  In *Leibowitz* there were alleged religious and ethnic slurs and in *Owen* an alleged death threat.  Here, there was more than threatening statements;  as alleged in the complaint, threatening statements were made by persons in positions of authority to plaintiff, a minor, and plaintiff was pulled out of class and forced to work on the District's computers for free; when Matthew stopped

working on the computers the District Defendants had him expelled from school and had him arrested. While the allegations as they currently stand may be insufficient to state a claim for involuntary servitude, they do, in this Court's opinion, constitute intolerable conduct sufficient to state a claim for intentional infliction of emotional harm against the Individual District Defendants. The claim of intentional infliction of emotional harm as against the District is dismissed given such a claim is barred by public policy. *See* cases cited *supra*.

The claim of negligent infliction of emotional harm against both the District and the Individual District Defendants is dismissed given the absence of facts which plausibly assert that plaintiff's physical safety was endangered or that he plausibly feared for his physical safety. *See Alexiadis v. N.Y. College of Health Professions*, 891 F. Supp. 2d 418, 436 (E.D.N.Y. 2012).

The Court now turns to the County Defendants' motion to dismiss.

## IV. The County Defendants' Motion

The Amended Complaint contains a single cause of action against the County Defendants: when he has arrested on November 23, 2013, Suffolk County police officers has him twice go through a staged "perp walk" in violation of his Fourth Amendment rights under the United States Constitution and his rights under the New York State Constitution. AC ¶¶ 99-101.

### A. Summary of the Parties' Arguments

County Defendants move to dismiss these claims arguing there is no allegation that the alleged Fourth Amendment violations were caused by a custom

or policy of the County. Further, the state constitutional claim should be dismissed because no notice of claim was filed as required by N.Y. Gen. Mun. Law §50 et seq. Finally, County defendants note that the SCPD is an agency of the County and thus it is not a proper defendant. County Mem. at 1.

Plaintiff responds that the law is well settled that "staged perp walks, solely for the media and with no legitimate law enforcement purpose are a violation of an individual's constitutional rights, and proceeds to list five references to 2015 local (i.e. Suffolk County) news footage which he claims "indicate[] that a 'perp walk' is a well entrenched custom within the Suffolk County Police Department." Citing the precept that leave to amend should be freely granted, Plaintiff ends his *Monell* argument with a request leave to amend the *Monell* claim. Pl.'s Mem. in Opp. to County at 1-3. Plaintiff concedes that any state tort claim is barred by the failure to comply with New York's notice of claim requirement. *Id*. at 3.

Noting that only staged walks that serve no legitimate law enforcement purpose are unconstitutional perp walks, the County replies that nothing in the footage indicates whether the officers depicted have a legitimate law enforcement purpose and the events depicted were subsequent to plaintiff's arrest.

### B. The Claims against the SCPD

The Court dismisses the claim against the Suffolk County Police Department because as a municipal agency it has no separate identity from the County and therefore it is not a proper defendant. *See Martinez v. County of Suffolk*, 999 F. Supp. 2d 424, 429 (E.D.N.Y. 2014).

## C.     The *Monell* Claim Against the County

As discussed earlier in this Memorandum, to show a policy, custom, or practice for purposes of *Monell* a plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees. *Giscombe v. New York City Dept. of Educ.*, 2013 WL 829127, * 7 (S.D.N.Y. Feb. 28, 2013).

While the complaint is devoid of any allegations as to a policy, custom or practice, based on plaintiff's opposition memorandum it is apparent that he seeks to impose liability based on a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials.

The footage referenced in plaintiff's memorandum gives no support to a claim of a persistent practice as there is no indication in any of that footage whether there was a legitimate law enforcement purpose. See *Caldarola v. County of Westchester*, 343 F.3d 570, 576-77 (2d Cir. 2003) (finding a legitimate purpose in coordinating a group of arrests, videotaping the post-arrest walk, and disseminating the videotape because "the County created and distributed the videotape to inform the public

about its efforts to stop the abuse of disability benefits by its employees.[] The fact that corrections officers—public employees—were arrested on suspicion of grand larceny is highly newsworthy and of great interest to the public at large. Divulging the arrests also enhances the transparency of the criminal justice system, and it may deter others from attempting similar crimes. Furthermore, allowing the public to view images of an arrestee informs and enables members of the public who may come forward with additional information relevant to the law enforcement investigation."); *Lauro v. Charles*, 219 F.3d 202, 213 (2d Cir. 2000) (noting that "[t]he interests of the press, and of the public who might want to view [actual, unstaged] perp walks, are far from negligible"). Nor is there any indication in that footage that the perp walks were staged. *Lauro*, 219 F.3d at 213 ( holding that "in staging the perp walk, [the] Detective [] engaged in conduct that was unrelated to the object of the arrest, that had no legitimate law enforcement justification, and that invaded [plaintiff's] privacy to no purpose. By exacerbating [plaintiff's] seizure in an unreasonable manner, [the Detective] violated the Fourth Amendment.") Finally, as the footage is of arrests that occurred subsequent to Matthew's arrest, they do not support the existence of a policy at the time Matthew was arrested.

Nor do the two instance of the alleged staging of Matthew's perp walk support the inference that the County had a policy of staging such walks. "There is no 'magic number' of instances of unconstitutional conduct that will suffice to permit the inference of a broader municipal policy or custom." *Norton v. Town of Islip*, 2016 WL 264930, *7 (E.D.N.Y. Jan. 21, 2016). However, courts in this Circuit

have rejected the notion that two, three or even four incidents will support such an inference. *See Giaccio v. City of New York*, 308 Fed. App'x 470, 471-72 (2d Cir. 2009) (dismissing *Monell* claim where plaintiff "identifie[d], at most, only four examples where the defendants might have disclosed [plaintiff's] positive drug test results," the injury complained of, as "fall[ing] far short of establishing a practice that is 'so persistent or widespread' "); *Bowles v. N.Y.C. Transit Auth.*, 2006 WL 1418602, at *16 n.31 (S.D.N.Y. May 23, 2006) (holding that "the combined evidence of only two incidents would still be insufficient to show a 'custom or usage' under the *Monell*"). *see also Prince v. County of Nassau*, 837 F. Supp. 2d 71, 104 (E.D.N.Y. 2011), *aff'd*, 563 Fed. App'x 13 (2d Cir. 2014) (dismissing *Monell* claim as plaintiff proffered evidence only as to purported harassment with respect to his bars, and not any other bars or restaurants).

The County's motion to dismiss the *Monell* claim is granted. The Court will allow Plaintiff to amend this claim but he is reminded that simply adding references to local news footage will not support plausibility.

### D.    The State Law Claim Against the County

County Defendants' motion to dismiss plaintiff's claim pursuant to Article I, Section 6, of the New York State Constitution is premised on the failure to file a notice of claim as required by New York General Municipal Law § 50-e. Plaintiff does not dispute that he was required to file a notice of claim for his state law claims and concedes that such claims are therefore "barred." Pl.'s Mem. in Opp. to

County at 3. The motion to dismiss the claim pursuant to Article I, Section 6, of the New York State Constitution is granted. *See Brooks v. County of Nassau*, 54 F. Supp. 3d 254, 257-58 (E.D.N.Y. 2014) (General Municipal Law § 50-e's requirement of a notice of claim applies to violations of state constitutional provisions and failure to comply requires dismissal).

## CONCLUSION

For the reasons set forth above, the motion of District Defendants is (1) granted as to the Thirteenth Amendment claim, with leave to replead; (2) granted on the claim of negligent infliction of emotional distress; (3) granted as to the District on the claim of intentional infliction of emotional distress but denied on that claim as to the Individual District Defendants; (4) granted on the claim of malicious prosecution, with leave to replead; (5) denied as to the *Monell* due process claim against the District. The motion of the County Defendants is granted, with leave to replead only the *Monell* claim against the County. As to those claims for which leave to replead has been granted, any amended complaint must be filed with twenty (20) days.

**SO ORDERED.**

Dated: Central Islip, New York
    May 5, 2016                                   /s/   Denis R. Hurley
                                                 Denis R. Hurley
                                                 District Court Judge